IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TONY ANTHONY HEARNE,           )
                               )
            Petitioner,        )
                               )
       v.                      )          1:03cr217-1
                               )          1:10cv25
UNITED STATES OF AMERICA,       )
                               )
            Respondent.        )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Petitioner Tony Anthony Hearne, a federal prisoner, has filed a *pro se* motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  (Docs. 78, 79.)[1]  He has also filed several other *pro se* motions: for an evidentiary hearing, to appoint an attorney, and for a certificate of appealability (Doc. 93); to amend his § 2255 motion (Doc. 95); and, again, to appoint an attorney (Doc. 96).  The Government opposes Hearne's motions.  (Docs. 90, 101.)  For the reasons set forth below, the motion to amend will be granted and the remaining motions will be denied.

## I.   BACKGROUND

On June 30, 2003, Hearne was indicted on one count of being a felon in possession of a firearm in violation of 18 U.S.C.

---

[1] All citations to docket entries refer to case 1:03cr217-1.

§§ 922(g)(1) and 924(a)(2); one count of possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); and one count of possession of counterfeit obligations in violation of 18 U.S.C. § 472. (Doc. 1.) On August 19, 2003, he pleaded guilty to the first and third counts, while the second count was dismissed pursuant to a plea agreement. (Docs. 14, 17.) On November 6, 2003, Hearne was sentenced to 120 months' imprisonment on Count I and 205 months' imprisonment on Count III, to run concurrently.

The Fourth Circuit affirmed his sentence. United States v. Hearne, 102 F. App'x 321 (4th Cir. 2004). He then successfully petitioned for certiorari from the U.S. Supreme Court. The Supreme Court vacated his sentence and remanded the case for resentencing in light of new precedent: United States v. Booker, 543 U.S. 220 (2005). See Hearne v. United States, 543 U.S. 1115 (2005). On remand, the Fourth Circuit found reversible error in light of Booker and remanded the case to the district court for resentencing. United States v. Hearne, 163 F. App'x 195 (4th Cir. 2005).

On April 28, 2006, Hearne was resentenced to 120 months' imprisonment on Count I and 172 months' imprisonment on Count III, to run concurrently. (Doc. 59.) He again appealed his sentence, and the Fourth Circuit affirmed the judgment of the district court. United States v. Hearne, 290 F. App'x 559 (4th

Cir. 2008). On January 12, 2009, the U.S. Supreme Court denied Hearne's petition for a writ of certiorari. <u>Hearne v. United States</u>, 555 U.S. 1123 (2009). On January 11, 2010, one day before the one-year time limitation in 28 U.S.C. § 2255 elapsed, Hearne filed a § 2255 motion. (Doc. 76.) As he failed to use the proper forms, the U.S. Magistrate Judge allowed him to refile properly within thirty days. (Doc. 77.) He did so (Doc. 78) and filed a supporting brief (Doc. 79).

## II. ANALYSIS

### A. Standard of review

A petitioner collaterally attacking his sentence or conviction must prove by a preponderance of the evidence that "his sentence or conviction was imposed in violation of the Constitution or laws of the United States, . . . that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack." 28 U.S.C. § 2255; <u>see also</u> <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958); <u>Almon v. United States</u>, 302 F. Supp. 2d 575, 579 (D.S.C. 2004). The court construes Hearne's *pro se* motions liberally. <u>Fields v. Attorney Gen. of State of Md.</u>, 956 F.2d 1290, 1298 n.20 (4th Cir. 1992); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). The court grants Hearne's motion to amend his § 2255 motion (Doc. 95) and considers the record supporting the § 2255 motion in its entirety.

3

**B. Section 2255 motion**

Hearne challenges his conviction and sentence on eighteen grounds, seventeen of which are in his original motion and one of which was added by amendment. Although he specifies eighteen different grounds, some of the grounds are duplicative. The court has considered the content of each one but, for the sake of clarity, distills them into twelve distinct claims.

**1. Ineffective assistance of counsel**

In Grounds Two, Four, and Six, Hearne argues that his defense counsel, Eric Placke, an Assistant Federal Public Defender, was ineffective and that a total breakdown in communication between lawyer and client made it impossible for Placke to provide Hearne with adequate representation. (Doc. 78 at 5, 8, 13.) He asserts that he was "misadvised by counsel and coerced under duress" to plead guilty; that Placke made misrepresentations to the court and "induced the District Court to induce Petitioner to plead guilty"; and that Placke refused to challenge his conviction and sentence on certain grounds on appeal. (Id.) Hearne states that he and Placke had an "adversarial relationship," which resulted in ineffective assistance of counsel. (Id. at 13.) Ineffective assistance of counsel is an appropriate collateral attack under § 2255, and so the court considers Hearne's claims.

In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. <u>See Strickland v. Washington</u>, 466 U.S. 668 (1984). A petitioner is not entitled to an evidentiary hearing on the claim based upon unsupported, conclusory allegations. <u>See Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), <u>abrog'n on other grounds recog'd by Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999).

As to the first <u>Strickland</u> prong, the petitioner bears the burden of affirmatively showing deficient performance. <u>See Spencer v. Murray</u>, 18 F.3d 229, 233 (4th Cir. 1994). A petitioner must show that his counsel's performance "fell below an objective standard of reasonableness" such that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687, 688. The U.S. Supreme Court has recognized that, in order to avoid "the distorting effects of hindsight," courts should employ "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689.

To establish prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. "In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." Harrington v. Richter, 131 S. Ct. 770, 791 (2011). Instead, "[t]he likelihood of a different result must be substantial, not just conceivable." Id. at 792.

"[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. Because Hearne fails to show that Placke's performance was deficient, the court will not address whether he was prejudiced by Placke's representation.

First, Hearne accuses Placke of "coercing" him into pleading guilty. (Doc. 78 at 5.) He claims to have maintained his innocence as to Count III (possession of counterfeit obligations). (Id.) He states that he "did not knowingly, voluntarily agree [to plead guilty] and had no understanding of the nature and consequences of the charges, but was told by counsel [Count III] would have no effect on the firearm charge in [Count I]." (Id. at 8 (internal parentheses omitted).)

Hearne's current assertions, however, directly contradict his sworn testimony during his Rule 11 colloquy. As to the "nature and consequences" of the charges, the court specifically informed him of the maximum penalties for each of the two counts to which he was pleading and the elements of each charge. (Aug. 19 Tr. at 22-23, 25-27.) He indicated he understood the elements that the Government would have to prove beyond a reasonable doubt at trial and the possible penalties, including a twenty-year prison sentence. (Id.) Hearne also confirmed his guilt and the voluntariness of his plea:

> [Court:] Mr. Hearne, the Court will not accept the plea of guilty from you for either one of these counts if you contend in any way that you are not guilty. So, I ask you at this point, are you in fact guilty of the charges contained in Count 1?
>
> [Def't:] Yes, sir.
>
> [Court:] Are you in fact guilty of the charges contained in Count 3?
>
> [Def't:] Yes, sir.
>
> [Court:] Has anyone made any threats or promises to get you to do anything that you're doing here today?
>
> [Def't:] No, sir.

(Id. at 28.) Later, during his sentencing allocution, Hearne again unequivocally admitted guilt to the charges: "I would just like to say to Your Honor that I take full responsibility for

the Ruger Blackhawk I had and the counterfeit money." (Nov. 6 Tr. at 47.)

A defendant's "[s]olemn declarations in open court [as to a plea or plea agreement] carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). That presumption presents "a formidable barrier in any subsequent collateral proceedings." Id. This is so "because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005). "Thus, in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false,'" and may be summarily dismissed without an evidentiary hearing. Id. (quoting Blackledge, 431 U.S. at 76) (internal citations omitted).

This first part of Hearne's ineffective assistance claim "necessarily relies on allegations that contradict [his] sworn statements," and he does not present any extraordinary circumstances warranting an evidentiary hearing. Id. at 222; cf. United States v. White, 366 F.3d 291 (4th Cir. 2004) (holding that admittedly ineffective representation, which the Government conceded rendered the guilty plea involuntary, was an

extraordinary circumstance); <u>Fontaine v. United States</u>, 411 U.S. 213 (1973) (holding that district court should have had an evidentiary hearing when the petitioner introduced documentary evidence supporting his claim that he was severely ill, both physically and mentally, and uncounseled at the time of his Rule 11 colloquy).  The claim that Placke coerced him into pleading guilty, therefore, is "palpably incredible" and must be dismissed.

Second, Hearne claims that Placke was ineffective because he refused to appeal the "grouping" of his two counts of conviction for sentencing purposes. (Doc. 78 at 8, 13.)  A defense counsel is permitted to make "reasonable strategic decision[s]," <u>United States v. Mayberry</u>, 341 F. App'x 859, 862 (4th Cir. 2009), however, especially when "demonstrat[ing] his sound evaluation of [the] likelihood of success," <u>United States v. Daniel</u>, 3 F.3d 775, 779 (4th Cir. 1993) (defense counsel not ineffective even though he failed to seek a judgment of acquittal).  <u>Cf.</u> <u>United States v. Mikalajunas</u>, 186 F.3d 490, 493 (4th Cir. 1993) (defense counsel not ineffective even when he miscalculated the likelihood of success of challenging sentencing enhancements).  Placke pursued other grounds on appeal and successfully petitioned for resentencing, which resulted in a 33-month reduction in Hearne's sentence.  On Hearne's second appeal, the Fourth Circuit did consider the

"grouping of offenses" challenge and rejected it as meritless. Hearne, 290 F. App'x at 561.[2] Placke's decision not to appeal on a meritless basis is not constitutionally deficient performance.

Third, Hearne generally alleges a "lack of communications" and an "adversarial relationship" between himself and his lawyer that prejudiced his defense. (Doc. 78 at 13.) A review of Hearne's appearances in court reveals that Hearne certainly viewed the lawyer-client relationship to be strained. The court twice considered Hearne's request for new counsel, but refused to grant it without specific reasons regarding why new counsel was required. (Aug. 7 Tr. at 8-11; Apr. 28 Tr. at 8-9.)

At first, Hearne stated that Placke had failed to file certain motions. (Aug. 6 Tr. at 5-6.) Placke informed the court that his client had wanted to file motions to suppress two statements: one statement by a witness, whose credibility Hearne disputed, and one statement by Hearne, on the basis that he had not been advised of his rights properly before giving the statement. (Id. at 7.) Placke had not filed a motion to suppress the witness statement because such statements are not properly subject to suppression; any credibility attacks that the defense wished to mount must be made at trial. (Id.)

_____

[2] The court noted that Hearne had forfeited review of the issue because he failed to raise it in his earlier appeal, but still rejected the basis for the claim.

Placke had not filed a motion to suppress Hearne's statement because after "extensive" discussion with his client about it, he believed that a motion to suppress would be unsuccessful.[3] (Id.)

Then, Hearne stated that Placke never really listened to him, was only concerned with what he (Placke) had to say, and became "verbally intimidating." (Aug. 7 Tr. at 4.) In response, the court required Placke to tape record all communications between the two and informed Hearne that he would review the recordings *in camera* if Hearne had any further problems with his counsel. (Id. at 8-9.) Hearne did not want to try to work with Placke, however:

> [Def't:] . . . It done went too far for me and Mr. Placke. From the beginning of day one, we got into too many verbal disagreements and arguments.

> [Court:] I can't accept that at this point. I want you to prove it to me. And you can prove it to me very quickly. If you can show me that Mr. Placke has adopted that attitude toward you, then I shall relieve Mr. Placke, but I want you to sit down there and talk to Mr. Placke and work it out. Do you understand what I'm saying?

> [Def't:] Yes, sir, but I cannot get along with Mr. Placke.

---

[3] Hearne states that at the time he wrote the statement, he had not been read his rights, was handcuffed, and felt intimidated (id. at 9), but the written statement apparently included a rights warning and an advisement of waiver, and so Placke believed any motion to suppress on that basis would be fruitless (id. at 7).

[Court:] Oh, Mr. Hearne, you have got to try and show me that you can't. I'm not going to accept it if just you cause the problems. I want to hear how Mr. Placke is also causing the problems, too. And I will be right on your side if you can show me that.

(Id. at 10.) After twelve days of tape recording every conversation between lawyer and client, Hearne could not point to any issue between them and instead confirmed that, as far as he knew, Placke had done everything he wanted him to do. (Aug. 19 Tr. at 7-9.)

Almost three years later, at Hearne's resentencing, he again requested new counsel and added several new claims of Placke's alleged misbehavior. He reported that Placke had told him not to say anything to the court because he would only "alienate the courts against [him]." (Apr. 28 Tr. at 24.) He also claimed that Placke violated attorney-client confidentiality. (Id. at 28.) In the current motion, Hearne reiterates some of the same claims and references his lawyer's "refusal to subject the Government's case to adversarial test." (Doc. 78 at 13.)

Taken as a whole, the record paints a picture of a client frustrated that his court-appointed lawyer would not undertake actions that the lawyer reasonably perceived to be meritless or procedurally improper. Most, if not all, of the difficulties between the two stem from Hearne's intransigence, which is

apparent on the record. Even when the court sought to accommodate Hearne and allow him the opportunity to prove Placke's misbehavior, Hearne resisted the accommodation and ultimately could never point to anything improper, despite twelve days of taped conversations between them. The strong presumption of truth in sworn statements in Rule 11 colloquies undermines Hearne's claim that Placke cautioned him not to be truthful in court.[4] See Blackledge, 431 U.S. at 74. The record of zealous advocacy and the breathing room given to defense counsel to make reasonable strategic decisions undermine his claim that Placke refused to "subject the Government's case to adversarial test." See Mayberry, 341 F. App'x at 862.

Although a breach of attorney-client confidentiality is a serious charge, the record reveals it is palpably incredible. Hearne never mentioned any such breach in four prior appearances in court, even though he did not hesitate to inform the court of Placke's other alleged misconduct. Instead, he testified under

---

[4] Hearne's sworn testimony directly contradicts the claim that Placke told him not to be truthful with the court so as not to alienate the court:

> Q   Has Mr. Placke urged you to respond truthfully to all questions put to you by the Court?
> A   Yes, sir.
> Q   Has he in any way told you to be deceitful to the Court on any answer that you have given?
> A   No, sir.
> Q   Has he told you in any way that it might hurt you for you to be truthful with the Court?
> A   No, sir.

(Aug. 19 Tr. at 29.)

oath that he was satisfied with Placke as an attorney and only raised this alleged breach of confidentiality when he was attempting to withdraw his plea 32 months after first pleading guilty, when it would have been far more difficult for the Government to try the case and win it.

Hearne has failed to show that Placke's performance was constitutionally deficient in any respect and thus fails the first prong of the <u>Strickland</u> test. On the contrary, the record shows a zealous and skilled defense: effective cross-examination of witnesses (Nov. 6 Tr. at 11-19); persuasive though ultimately unsuccessful argument against certain sentencing enhancements (<u>id.</u> at 22-30); and a successful challenge of the calculation of criminal history points (<u>id.</u> at 34-39). Indeed, the Assistant U.S. Attorney ("AUSA") acknowledged that he had been willing to give Hearne a better plea deal because he was being represented by Placke. (Aug. 19 Tr. at 16-17.) And on top of all that, Placke successfully petitioned the U.S. Supreme Court to vacate the sentence, which on remand was reduced by 33 months. Whatever Hearne's problems with Placke, they were not because of Placke's performance, which was objectively exceptional.

## 2. Bias and interference by the court

In Grounds Five, Seven, Eleven, and Sixteen, Hearne asserts that Judge William Osteen, Sr., the U.S. District Judge assigned to his case, "erred by becoming involved in the plea

14

negotiations of Hearne's Rule 11 colloquies, then forc[ed] the defendant to choose between his right to unconflicted counsel and his right to go to trial." (Doc. 78 at 13.) He further asserts that Judge Osteen was wrong to deny him new counsel and to order the tape recording of his conversations with Placke. (<u>Id.</u>) Finally, he sets forth a litany of alleged judicial misconduct based on his resentencing, claiming that Judge Osteen (1) "displayed indignation towards [him]"; (2) "mocked" him; (3) became "an advocate with a self serving interest for . . . Placke"; (4) "erred in litigating how good of an attorney appointed counsel was for [him], taking up the entire proceeding in this manner"; (5) "never [gave him] a fair resentencing"; and (6) "showed bias towards [him]." (<u>Id.</u> at 15, 19.)

As previously discussed, the court may dismiss collateral attacks without an evidentiary hearing when the claims are "palpably incredible" or "patently frivolous or false." <u>Blackledge</u>, 431 U.S. at 76. Hearne does not allege that Judge Osteen had any contact with him or took any improper action outside of open court; all of his claims are based on the five appearances he had in Judge Osteen's courtroom, and thus this court may determine whether Hearne's claims are "palpably incredible" or "patently frivolous or false" based on the transcripts of those proceedings.

Hearne's accusation that Judge Osteen became involved in his plea negotiations is patently false. On the contrary, Judge Osteen took pains to disavow involvement and separate himself from the plea process. Hearne's grievance appears to stem from a change in the Government's plea offer from August 6, 2003, the day of Hearne's first unfinished Rule 11 colloquy. (Aug. 19 Tr. at 9-10.) The August 6 plea offer included the Government's recommendation to award a reduction in sentencing points for acceptance of responsibility; the August 7 plea offer did not. (Id.) In response to Hearne reporting this grievance, Judge Osteen stated, "Well, I don't have any say-so in what negotiations you have with the Government, that's between you and the Government." (Id. at 10.) Again, later, Judge Osteen reiterated:

> Well, as I see it, on [August 6], once you did not go through with the change of plea at that time, the Government was not bound to leave that [offer] on the table any longer. That was a negotiation between you and the Government, which Mr. Placke had tried to work out on your side, and which the Government had worked out on their side.
>
> So, I do not find that the Government is bound to leave their agreements open to a decision at some time in the future for a defendant to enter into a plea agreement, even though it may be signed. If the Court finds that the defendant is not in a position to accept the plea agreement, the change of plea, then the written agreement fails also, and you have to start over again with where you are.
>
> At that point, you had a right to try to negotiate with the Government, and the Government had

a right to negotiate on its own.  I don't enter into
that, that's between you and the Government.

(Id. at 15-16.)  Judge Osteen's only "involvement" came on

Hearne's behalf.  When Hearne intimated that Placke may have

said something to the AUSA that made him change his offer, Judge

Osteen inquired:

> Mr. Joseph, the Court has no business delving into
> what the negotiations [were] or why you negotiated any
> particular point.  However, specifically, I would
> like to ask you, was there anything Mr. Placke said that
> offended you or caused you in any way to change your
> position to what it had been originally on the plea
> agreement?

(Id. at 16.)  The AUSA responded that he had actually given

Hearne a better deal because Placke was his lawyer and that the

reason for withdrawing the recommendation was because Hearne

himself had indicated he wanted to file motions.[5]  (Id. at 16-

17.)  The record belies any assertions of judicial misconduct.

Judge Osteen simply explained the rules of the plea bargaining

---

[5] There is no indication the AUSA was retaliating against Hearne for
exercising his rights.  Rather, it appears that he simply believed at
that point that Hearne wanted to go to trial and so he began preparing
for that, including by filing an information of prior conviction.
(Id. at 17.)  Once Placke told him that Hearne still wanted to
negotiate a plea, he took one benefit of the plea agreement off the
table because of the extra time and trouble he went through to prepare
for trial.  (Id.)  The Government withdrew a promise to recommend that
Hearne qualify for acceptance of responsibility and the resulting
decrease in calculation of offense level under the Sentencing
Guidelines; the ultimate determination on those sentencing points
belonged to the court, and the court informed Hearne of that.  (Id. at
17-18.)

process, disavowed any role in it, and ensured for Hearne that his lawyer had not poisoned the waters with the AUSA.

Next, Hearne asserts that Judge Osteen gave him an unfair choice between his right to counsel and his right to trial. As every criminal defendant enjoys both of those rights under the U.S. Constitution, see U.S. Const. amend. VI., a forced choice between them would indeed be unconstitutional. Judge Osteen did no such thing, however, as the context of his comments to Hearne reveals. Immediately after instructing Placke and Hearne to tape record their conversations, and after Hearne's protests that things had gone "too far" and no working relationship was possible between lawyer and client, Judge Osteen said:

> I would suggest that you be prepared to show me why Mr. Placke has not cooperated. You have had your differences, I will accept that, but they're not such differences that should cause me to appoint different counsel for you, unless you can show me how that breaches. And I will hear anything that you want to show me. Mr. Placke will produce those tapes at that time. Otherwise, be prepared to use Mr. Placke, or be prepared to try the case yourself.

(Aug. 7 Tr. at 10-11.)[6] Judge Osteen expressed his willingness to appoint new counsel as long as Hearne could show him at least some failure to cooperate or wrongful behavior on Placke's part. He was unwilling to appoint substitute counsel, however, if the problem was mere dislike or intransigence on Hearne's part.

---

[6] Judge Osteen says in substance the same thing at pages 8-9 as well.

After all, an indigent defendant does not have an absolute right to counsel of his choosing; he "can demand a different appointed lawyer only with good cause." United States v. Perez, 661 F.3d 189, 191 (4th Cir. 2011) (quoting United States v. Gallop, 838 F.2d 105, 107 (4th Cir. 1988)).  All Judge Osteen did was ask Hearne for good cause to appoint substitute counsel and tell him that, if he had no good cause to do so, he could try the case by himself, which is his right.  See 28 U.S.C. § 1654; Faretta v. California, 422 U.S. 806, 812-13 (1975) (noting the right to self-representation in federal courts.

Relatedly, Hearne argues that Judge Osteen was wrong to deny him new counsel. (Doc. 78 at 13, 19.)  He failed to raise this claim either on appeal of his first sentencing or on appeal of his resentencing.  He is therefore barred from raising it now as part of a § 2255 motion.[7]  See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (petitioner may not recast issues already decided or waived on direct appeal as collateral attacks under § 2255).

Finally, Hearne asserts that his resentencing was invalid because Judge Osteen was biased against him.  According to Hearne, Judge Osteen (1) "displayed indignation towards [him]";

---

[7] Although the standards for ineffective assistance of counsel and denial of a motion for new counsel are different, compare Strickland, 466 U.S. at 687, with Gallop, 838 F.2d at 107, Hearne would fare no better on the merits of this claim than his ineffective assistance claim.

(2) "mocked" him; (3) became "an advocate with a self serving interest for . . . Placke"; (4) "erred in litigating how good of an attorney appointed counsel was for [him], taking up the entire proceeding in this manner"; (5) "never [gave him] a fair resentencing"; and (6) "showed bias towards [him]." (Id. at 15, 19.) As with other collateral attacks, the court may summarily dismiss a defendant's claims if they are "palpably incredible" or "patently frivolous or false." Blackledge, 431 U.S. at 76.

A review of the court transcripts reveals that these claims simply lack merit. Throughout all five appearances, Judge Osteen dealt with Hearne with impartiality and remarkable patience. Hearne points to no specific point at which he was "mocked," and the court can find none. As for Judge Osteen's good opinion of defense counsel, he made only three comments about Placke's competence during the resentencing,[8] totaling less

---

[8] Those three comments are as follows:
> Mr. Placke is known as a good lawyer in this district – an outstanding lawyer in this district – and I don't have anything before me to indicate that he hasn't done his job, except some conclusions that ["]we had a breakdown, and he was not doing what I wanted him to do.["]

(Apr. 28 Tr. at 8.)
> [Y]ou're dealing with perhaps one of the three or four people who handle more cases in this district than anybody else. I personally have witnessed the actions of Mr. Placke many times in this court, and I have admired a great deal his enthusiasm for defending his clients. By the same token, I recognize that that may not always be true, but I haven't seen anything in this case that shows me that it isn't.

(Id. at 11.)

than eighteen lines of a 73-page transcript – a far cry from Hearne's assertion that Judge Osteen "litigat[ed] how good of an attorney [Placke] was for [him], taking up the entire proceeding in this manner." (Doc. 78 at 19.) And the claim that Hearne did not receive a fair resentencing rings hollow in light of the Fourth Circuit's affirmance of his sentence. Hearne, 290 F. App'x at 560. In sum, Hearne's assertions of judicial bias and interference are patently false and therefore will be dismissed.

### 3. Refusal to grant Hearne's plea withdrawal

In Grounds Two and Eleven, Hearne contends that the court erred in refusing to grant his plea withdrawal at resentencing. (Doc. 78 at 5, 15.) He failed to raise this claim on appeal, choosing instead to contest the validity of his guilty plea for the first time 32 months after the plea was accepted (Doc. 49 ("Motion to Withdraw Guilty Plea"), filed Apr. 25, 2006), after one sentencing, two appeals to the Fourth Circuit, and one appeal to the U.S. Supreme Court. He did raise the claim in the appeal of his resentencing, but the Fourth Circuit declined to consider it because it was outside the scope of the remand order. Hearne, 290 F. App'x at 562.

---

[The right to represent yourself is] your privilege at any time, but I just wanted you to know that Mr. Placke and [AUSA] Mr. Auld have assisted you greatly here today. (Id. at 68.)

This court is "bound to carry the mandate of the upper court into execution and may not consider the questions which the mandate laid at rest." United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (quoting Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168 (1939)) (internal brackets omitted). The mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court." Id. It also "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived." Id.

Here, the district court found that Hearne "willfully, knowingly and intentionally tendered his plea of guilty." (Aug. 19 Tr. at 30.) Hearne chose to forgo appellate review of that decision by not contesting it on appeal. The Fourth Circuit's decision laid to rest all issues that could have been raised on direct appeal but were not, including the validity of Hearne's guilty plea. Then, the U.S. Supreme Court decision vacated the judgment and remanded the case, but remanded it only in light of Booker. A limited remand for resentencing does not breathe new life into claims already procedurally barred.[9] Bell, 5 F.3d at 66.

---

[9] Hearne attempts to rely on the language of Rule 11(d), but that rule applies to defendants "awaiting sentencing," not defendants awaiting resentencing. Fed. R. Crim. P. 11(d). Furthermore, he cannot furnish a "fair and just reason" meriting withdrawal. See id.

### 4. Vindictive and selective prosecution

In Grounds Fourteen and Seventeen, Hearne contends that the prosecutors acted wrongfully in his case. He objects to the Government filing an information of prior conviction, which would have led to enhanced penalties, "to induce Petitioner to plea." (Doc. 78 at 20.) He also contends that "[i]t was plain error for the Court to allow such harsh scoring and grouping and manipulation of the Guidelines . . . based on 'vindictive and selective prosecution.'" (Id. at 17.)

The Government has every right to file an information of prior conviction if one exists. While it should not file charges or file an information "simply to exert leverage to induce a plea," it should charge "the most serious, readily provable offense . . . consistent with the defendant's conduct." U.S. Attorneys' Manual § 9-27.300 (2002), available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/. The AUSA did not violate Hearne's constitutional rights by filing the information of prior conviction or by the particular plea bargains he offered. The Government is not bound to offer any particular plea bargain, or indeed to offer a plea bargain at all. See Weatherford v. Bursey, 429 U.S. 545 (1977) (criminal defendant has no constitutional right to a plea bargain). Without direct evidence of an improper motive, the defendant must present evidence that gives rise to a presumption of

vindictiveness. <u>United States v. Wilson</u>, 262 F.3d 305, 314 (4th Cir. 2001). Hearne has not done so here, as the presumption of vindictiveness "rarely, if ever" applies to a prosecutor's pretrial decisions, <u>id.</u> at 315, and he has shown no circumstances that "pose a realistic likelihood of vindictiveness," <u>id.</u> at 314 (quoting <u>Blackledge</u>, 417 U.S. at 27). The Fourth Circuit has specifically held that a prosecutor may legitimately seek an enhanced penalty under 21 U.S.C. § 851 if the defendant repudiates a plea agreement. <u>United States v. Morsley</u>, 64 F.3d 907, 920 (4th Cir. 1995).

Further, Hearne has provided the court with no facts whatsoever to support his conclusory allegations of "vindictive and selective prosecution." He appears to challenge the AUSA's pursuit of "harsh" sentencing enhancements, but the AUSA was not responsible for the enhancements. The U.S. Probation Office made an initial assessment of Hearne's total offense level under the Sentencing Guidelines, including any enhancements. The AUSA merely presented facts to the court to support the Probation Office's assessment once Hearne objected to the Presentence Report ("PSR"). The ultimate decision as to all sentencing enhancements belonged to the court. Thus, Hearne's claim of vindictive and selective prosecution is both misplaced and devoid of factual support.

### 5. Grouping of offenses

In Grounds One, Two, Three, and Ten, Hearne challenges the manner in which his offenses were grouped for sentencing purposes. He argues that Count III (possession of counterfeit obligations) should have been considered the "most serious offense" because it has a twenty-year maximum, rather than Count I (possession of a firearm by a convicted felon), which has a ten-year maximum.

Hearne raised this claim on the direct appeal of his resentencing. The Fourth Circuit held that the claim both failed on the merits and was procedurally barred because of the mandate rule. Hearne, 290 F. App'x at 561. As this claim has already been decided on direct appeal, Hearne may not recast it as a collateral attack for review under § 2255. See Boeckenhaupt, 537 F.2d at 1183.

### 6. Firearm enhancements

In Ground Eight, Hearne challenges the sentencing enhancements applied based on his possession of three other firearms, including a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30),[10] which raised his base offense level to 26 and added two additional points. The court decided to

---

[10] These statutes define certain particularly dangerous firearms, including sawed-off shotguns, machine guns, and silencers. The court found that Hearne possessed a MAC-9 and MAC-10, which are types of machine guns.

25

apply those enhancements because it credited the testimony of a witness at the sentencing hearing. Hearne disputes the credibility of that witness and argues that the court erred by relying on "insufficient unreliable evidence." (Doc. 78 at 14.)

Hearne raised this claim on the direct appeal of his resentencing. The Fourth Circuit held that the claim failed on the merits. Hearne, 290 F. App'x at 561-62. As this claim has already been decided on direct appeal, Hearne may not recast it as a collateral attack for review under § 2255. See Boeckenhaupt, 537 F.2d at 1183.

### 7. Refusal to grant request for downward departure

In Grounds Fourteen and Fifteen, Hearne asks this court "to forgo a mechanistic approach . . . and consider a [downward] departure." (Doc. 78 at 18.) He contends that the sentencing court erred in allowing "such harsh scoring and grouping and manipulations of the guidelines" without departing downward. (Id. at 17.) Again, Hearne already raised this claim on direct appeal, and the Fourth Circuit affirmed the district court's judgment, finding no error in its refusal to depart downward. Hearne, 290 F. App'x at 561. As this claim has already been decided on direct appeal, Hearne may not recast it as a collateral attack for review under § 2255. See Boeckenhaupt, 537 F.2d at 1183.

### 8. Criminal history level

In Ground One, Hearne asserts that his criminal history level was erroneously calculated and that it should be Category V rather than Category VI. (Doc. 78 at 4.) However, he was sentenced using the Guideline range for Category V. (Apr. 28 Tr. at 58-60). He appears to recognize that he was sentenced using that range in Ground Nine (Doc. 78 at 14), but then argues in Ground Fifteen that the court should have departed downward to Category IV (id. at 18).

His claim in Ground One is moot because he was in fact sentenced using the range for Category V. His claim in Ground Fifteen fails for the same reason his claim that the court erred in not departing downward fails. See supra II.B.7.; Boeckenhaupt, 537 F.2d at 1183.

### 9. Prior felonies

In Grounds Nine and Seventeen, Hearne contends that his prior felonies should not have been counted to increase his base offense level. (Doc. 78 at 14, 20-21.) In his supplemental motion, he argues that those prior convictions should not have been counted as felonies under United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc). (Doc. 95.)

Hearne's base offense level was 26 because the court found that the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30) and that he had committed

the offense after sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. U.S. Sentencing Guidelines § 2K2.1(a)(1) (2003); (Apr. 28 Tr. at 55). Hearne asserts that the conviction reported in paragraph 42 of his PSR – for felony possession with intent to sell and deliver cocaine and possession with intent to sell and deliver marijuana – should only be counted as one prior conviction, and therefore that his base offense level should have been lower.

Even assuming, however, that his convictions in paragraph 42 count as only one prior conviction, Hearne has other felony convictions for crimes of violence: a misdemeanor assault with a deadly weapon, for which he was sentenced to 18 months' imprisonment (PSR paragraph 32), and another misdemeanor assault with a deadly weapon, for which he was sentenced to two years' imprisonment (PSR paragraph 35).[11] The court need not ask, under Simmons, whether Hearne may have been sentenced to more than one year of imprisonment for the offenses he committed, because he was in fact sentenced to more than one year for each of his assault convictions and to 11 to 14 months' imprisonment for the drug convictions. Simmons does not alter his sentencing range.

---

[11] A felony conviction in § 2K2.1 means "a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." U.S. Sentencing Guidelines § 2K2.1, Application Note 5 (2003).

Hearne also claims that the court erred in increasing his base offense level for drug convictions without proven drug quantities. (Doc. 78 at 20-21.) He misunderstands the Sentencing Guidelines, however, because the definition of "controlled substance offense" depends on the length of potential imprisonment, not a specific drug quantity. See U.S. Sentencing Guidelines §§ 4B1.2(b); 2K2.1, Application Note 5 (2003).

**10. Sentencing disparity**

In Grounds One, Two, and Thirteen, Hearne asserts that his sentence was "unreasonable when compared to other similarly charged defendants" and he "brings an Equal Protection Challenge to the grouping with respect to the disparity to other similarly situated defendants." (Doc. 78 at 4, 17 (internal brackets omitted).) He was sentenced to 172 months, which was within the properly calculated sentencing range (140 to 175 months). (Apr. 28 Tr. at 68-69.) This claim is not only procedurally barred because he failed to raise it on direct appeal, see Boeckenhaupt, 537 F.2d at 1183, but also lacks any factual support and appears to fail on the merits, as a within-Guidelines sentence is presumptively reasonable, see Rita v. United States, 551 U.S. 338, 347 (2007), and the Fourth Circuit affirmed the reasonableness of his sentence, see Hearne, 290 F. App'x at 562.

### 11. Version of the Sentencing Guidelines used

In Ground Twelve, Hearne contends that the court violated the Ex Post Facto Clause, U.S. Const., Art. I, § 9, cl. 3; Art. I, § 10, cl. 1, by sentencing him according to the 2003 version of the Sentencing Guidelines, rather than the 2002 version, which is when his offense occurred (Doc. 78 at 16). The U.S. Supreme Court recently decided that sentencing a defendant under a version of the Guidelines that is current at sentencing but that imposes a higher sentencing range than the version of the Guidelines in effect when the crime was committed violates the Ex Post Facto Clause. Peugh v. United States, 133 S. Ct. 2072, 2081-84 (2013).

Hearne committed his offense on January 26, 2002. (Doc. 1.) The version of the Sentencing Guidelines in effect on that day was the 2001 version.[12] He was sentenced on November 6, 2003, when the 2003 version of the Guidelines was in effect, and resentenced on April 28, 2006, using the 2003 version. The Supreme Court did not explicitly indicate – and the Fourth Circuit has not yet ruled – whether Peugh is a new substantive rule of constitutional law that would apply retroactively. The Seventh Circuit and other district courts in the Fourth Circuit have held that Peugh does not apply retroactively. See Hawkins

---

[12] The 2001 version took effect on November 1, 2001; the 2002 version did not take effect until November 1, 2002.

v. United States, 724 F.3d 915 (7th Cir. 2013); United States v. Vela, __ F.3d __, No. 13-1494, 2014 WL 310384 (7th Cir. Jan. 29, 2014); Engle v. United States, Nos. 3:13-cv-500-FDW, 3:04-cr-55-FDW-DCK-1, 2014 WL 268733 (W.D.N.C. Jan. 23, 2014); Kelly v. United States, Nos. 5:13-CV-00131-RLV, 5:96-CR-00033-RLV-2, 2013 WL 6048997 (W.D.N.C. Nov. 14, 2013); United States v. Condra, No. 1:05CR00050, 2013 WL 4678165 (W.D. Va. Aug. 30, 2013).

Even if Peugh were to apply retroactively, however, Hearne has pointed to no difference in the sections of the Guidelines relevant to his sentencing. The court has compared the relevant sections of the 2001 and 2003 versions and finds no difference. Compare U.S. Sentencing Guidelines §§ 2K2.1, 4B1.2 (2001), with U.S. Sentencing Guidelines §§ 2K2.1, 4B1.2 (2003). This contention, therefore, lacks merit.

### 12. Retroactive amendments to sentencing for crack cocaine offenses

In Ground Thirteen, Hearne requests a "modification and order reducing his Guideline range by 'two levels' based on the new retroactive amendments to the crack cocaine guidelines." (Doc. 78 at 16.) Although Hearne was charged with a crack-related offense (Count II), he only pleaded guilty to Count I (possession of a firearm by a convicted felon) and Count III (possession of counterfeit obligations). Count II was dismissed at sentencing. (Nov. 6 Tr. at 57.) Because Hearne was not

31

sentenced for a crack-related offense, the crack-related sentencing amendments do not apply to him.

The court has considered all of Hearne's other claims, arguments, and requests in his § 2255 motion (Doc. 78), supporting brief (Doc. 79), reply brief (Doc. 93), and motion to amend (Doc. 95) and finds them without merit.

### C. Motions for an evidentiary hearing and an attorney

In Hearne's reply brief, he requested an evidentiary hearing on the issues raised in his § 2255 motion and appointment of counsel. (Doc. 93.) More than a year later, he again moved for appointment of counsel. (Doc. 96.) The court has considered his request for an evidentiary hearing in its analysis of the merits of his claims. Because the court finds that his claims are "palpably incredible" or "patently frivolous or false," there is no need for an evidentiary hearing. See supra II.B.; Lemaster, 403 F.3d at 221.

In considering his request for appointment of counsel, the court notes first that there is no constitutional right to appointed counsel in a habeas case. See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (holding that "the right to appointed counsel extends to the first appeal of right, and no further"). Under 28 U.S.C. § 2241 and 18 U.S.C. § 3006A, the court, in its discretion, may appoint counsel if "the interests of justice so require." 18 U.S.C. § 3006A(a)(2). However, having reviewed

Hearne's request for counsel and the record in this matter, the court does not find that appointment of counsel is required by the interests of justice or otherwise.

### D. Certificate of appealability

Hearne asks this court to issue a certificate of appealability in the event that his § 2255 motion is denied. (Doc. 93.) Finding neither a substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability will not be issued.

### III. CONCLUSION

For the reasons stated, the court finds Hearne's claims in his § 2255 motion without merit.

IT IS THEREFORE ORDERED that the motion to amend and supplement the § 2255 motion (Doc. 95) is GRANTED; the motion for appointment of counsel (Doc. 96) is DENIED; the motion for an evidentiary hearing, appointment of counsel, and certificate of appealability (Doc. 93) is DENIED; the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 78) is DENIED; and this action is DISMISSED WITH PREJUDICE.

                                    /s/   Thomas D. Schroeder
                                  United States District Judge

March 6, 2014

33